JUSTICE GABRIEL,
concurring.
¶68 Because I believe that the majority has correctly set forth the applicable law and has reached the result dictated by that law, I concur in the majority’s opinion. I write separately, however, to express my view that the result that I believe the law dictates here is arguably inequitable and warrants legislative action' to clarify the purpose and effect of a certificate of insurance, as well as the lights and obligations of those who provide and those who obtain such certificates.
*1228 I. Applicable Statutes
69 Like the majority, see maj. op. ¶¶ 47-64, I cannot say that the applicable statutes impose a duty on insurers to give notice of a policy's cancellation to certificate holders.
T70 Section 844-110, C.R.S. (2015), requires every insurance carrier authorized to transact business in Colorado, including Pin-nacol Assurance, to notify "any employer insured by the carrier or Pinnacol Assurance, and any agent or representative of such employer, if applicable, by certified mail of any cancellation of such employer's insurance coverage." I see nothing in the applicable definitions of "employer" to suggest to me that the term "employer" as used in this section includes a statutory employer like Hoff here. See § 840-203, C.R.S. (2015) (defining the term "employer" for purposes of the Workers' Compensation Act (the "Act")); see also § 8-40-302, C.R.S. (2015) (delineating the seope of the term "employer" under the Act).
171 Even if the term "employer" as used in section 8-44-110 did include statutory employers, however, neither applicable law nor the certificate of insurance at issue renders such an employer an "insured" for purposes of that section. The certificate of insurance is not itself an insurance policy or contract of insurance. Rather, it is "[al document acknowledging that an insurance policy has been written, and setting forth in general terms what the policy covers." Certificate of Insurance, Black's Law Dictionary (10th ed. 2014).
T72 Accordingly, in my view, the applicable statutes did not require that notice of cancellation be provided to the certificate holder in this case.
T73 I am not persuaded otherwise by seetion 8-41-404, C.R.S, (2015). Subject to certain exceptions not pertinent here, section 8-41-404(1)(a) requires a person who contracts for the performance of construction work on a construction site either to provide workers' compensation coverage for, or to require proof of workers' compensation coverage from, every person with whom he or she has directly contracted to perform the construction work. Section 8-41-404(1)(c) then provides that any person who contracts for the performance of such work and who exercises due diligence by either providing workers' compensation coverage or requiring proof of such coverage from every person with whom he or she has a direct contract "shall not be liable under subsection (8) of this section." Section 8-41-404(8), in turn, provides for an administrative fine for violating subsection (1).
T74 I see nothing in section 8-41-404 that renders a certificate holder an insured for purposes of the Act generally or section 8-44-110 in particular. To the contrary, section 8-41-404, on its face, makes clear that a certificate constitutes proof that someone else has obtained workers' compensation coverage.
T75 Notwithstanding the foregoing, I acknowledge that section 8-41-404 suggests the importance of certificates of insurance in this context, particularly given that those who contract for the performance of construction work often rely on such certificates and on the insurance coverage reflected thereon. As a result, it may well be sound public policy to require insurers to provide notice of an insurance policy's cancellation to those holding certificates of insurance concerning the subject insurance policy. Such a public policy decision, however, is for the legislature and not the courts to make.
T76 Accordingly, I would respectfully encourage our General Assembly to consider the public policies implicated by this case, particularly with respect to the purpose and effect of a certificate of insurance and the rights and obligations of those who provide and those who obtain such certificates.
II. Certificate of Insurance
177 Having determined that the applicable statutes did not require that notice of cancellation be provided to the certificate holder in this case, I must next consider whether the certificate itself required such notice. This question, in turn, requires me to assess first whether the disclaimers and exculpatory language contained in the certificate are void as against public policy and second whether the certificate is ambiguous.
*1229 T8 The certificate at issue contains a disclaimer that states:
THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURERS) AUTHORIZED REPRESENTATIVE OR PRODUCER AND THE CERTIFICATE HOLDER.
179 The certificate further states, "NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES."
180 Because I perceive nothing in the applicable statutes that imposes a duty on insurers to give notice of a policy's cancellation to certificate holders, I cannot say that those statutes render the above-quoted provisions, which merely explain the limits of the certificate, void as against public policy. Accordingly, I proceed to address whether the certificate at issue is ambiguous.
81 Whether a written contract is ambiguous is a question of law that we review de novo. Pub. Serv. Co. v. Meadow Island Ditch Co., 132 P.3d 333, 339 (Colo. 2006). "A contract is ambiguous when it is reasonably susceptible to more than one meaning." Id.
T82 To determine whether a contractual provision is ambiguous, we examine the provision's language and construe that language in harmony with the plain and generally accepted meaning of the words employed. Ad Two, Inc. v. City & Cty. of Denver, 9 P.3d 373, 376 (Colo. 2000). We may also consider "extrinsic evidence regarding the meaning of the written terms, including evidence of local usage and of the cireumstances surrounding the making of the contract," but in determining whether a contract term is ambiguous, we may not consider "the parties' extrinsic expressions of intent." Pub. Serv. Co., 132 P.3d at 339.
183 Here, Hoff contends that the certificate is ambiguous because the language concerning the notice of cancellation is encompassed in a box including the identity of the certificate holder. She argues that the clear import of the location and language of the notice provision is that it is a message to the certificate holder directly. Her argument may be correct insofar as it goes, but it does not establish any ambiguity as to whether and when notice to the certificate holder is required, which is the issue before us.
"84 Specifically, although I agree with Hoff that the juxtaposition .of the identity of the certificate holder with the notice provision suggests that the notice referred to is notice due the certificate holder, nothing in the juxtaposition of these provisions suggests to me that notice must always be given to the certificate holder. To the contrary, the notice provision states that notice will be delivered "in accordance with the policy provisions," and Hoff does not suggest any amb1gu1ty as to the meaning of that phrase.
185 Accordingly, Hoff has not established that the certificate at issue is ambiguous.
III. Conclusion
186 For these reasons, I respectfully concur in the majority's opinion and the judgment of the court.